**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ibrahima Fall,<br><br>  Plaintiff,<br><br>v.<br><br>First Mercury Insurance Company,<br><br>  Defendant. | No. CV-16-01286-PHX-DGC<br><br>**ORDER** |

Plaintiff Ibrahima Fall filed this breach of contract action against Defendant First Mercury Insurance Company, alleging that First Mercury improperly refused to defend Gin-Cor, LLC ("Gin-Cor," or the "Insured") in the underlying tort action, *Fall v. Gin-Cor, LLC d/b/a/ Myst Nightclub, et. al.*, Maricopa County Superior Court No. CV2012-OI2552. Doc. 1-1. The parties have filed cross-motions for summary judgment. Docs. 11, 20. The request for oral argument is denied because the issues are fully briefed (Docs. 12-19, 20-22, 26-28) and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998). For the reasons that follow, the Court will deny both parties' motions.

**I.     Background.**

**A.     The Underlying Incident.**

On April 28, 2012, Plaintiff was "a business invitee and guest" of Gin-Cor's nightclub. Doc. 12, ¶ 1; Doc. 22 at 1-2. Around 1:55 a.m., after speaking with a female

patron of the nightclub, Plaintiff was approached by a nightclub bouncer and informed that the female patron was the bouncer's girlfriend. Doc. 12, ¶ 4. Before Plaintiff could respond, "multiple additional men who . . . were also security officers/bouncers and employed by [Gin-Cor], then attacked, assaulted, and violently hit the Plaintiff by punching him, kicking and stomping on him, and ultimately, dragging him out of the nightclub and dumping him on the sidewalk." *Id.*, ¶ 6. Police investigated the incident, but no charges were filed because "it was not obvious that there was excessive force used by the bouncers of the nightclub in removing [Plaintiff][.]" *Id.*, ¶ 7.

Plaintiff was taken to a hospital by ambulance and an imaging study revealed a "comminuted fracture through the lateral tibial plateau, with slight depression of the fracture fragments and slight impaction in this area." *Id.*, ¶ 9. On May 2, 2012, Plaintiff underwent surgery to correct the fracture. *Id.*, ¶ 11. Plaintiff alleges that he "incurred $38,829.01 in medical bills as a result of his injuries, and further suffered lost wages of approximately $11,000, for a total of $49,829.01 in special damages." *Id.*, ¶ 13.

### B.   The Underlying Litigation and *Damron* Agreement.

On September 10, 2012, Plaintiff filed a complaint against Gin-Cor. Plaintiff amended the complaint three days later. *Id.*, ¶ 15. Plaintiff alleged five claims: "(1) Assault; (2) Battery; (3) Negligence – Failure to Train; (4) Negligence – Unsafe Condition/Failure to Supervise; (5) Punitive Damages." *Id.*, ¶ 16. After being served, Gin-Cor attempted to tender the defense of all claims to First Mercury. *Id.*, ¶ 20. Gin-Cor believed it was insured by First Mercury through commercial general liability policy number EPCA000805 with liability limits of $1,000,000 per occurrence and $2,000,000 in the aggregate for the policy period from June 27, 2011 to June 27, 2012 (the "Policy"). *Id.*, ¶ 19. On December 20, 2012, First Mercury issued a letter denying any duty to defend or indemnify Gin-Cor for the claims asserted by Plaintiff. *Id.*, ¶ 20; Doc. 19 at 7 ("Exhibit J"). First Mercury denied coverage based on exclusions in the Policy for "Expected or Intended Injury," "Assault & Battery," and "Punitive Damages." Doc. 12, ¶ 21.

On August 22, 2013, Gin-Cor answered the amended complaint. Doc. 15 at 10 (Exhibit H – Gin-Cor's answer is dated August 22, 2013). *But see* Doc. 12, ¶ 17 ("The nightclub answered the amended complaint on August 22, 2012."). Gin-Cor denied liability, but admitted that: "(1) it owed Plaintiff a duty of reasonable care by adequately training its employees in proper security measures; and (2) it owed a duty of reasonable care to maintain a safe environment for all of its business invitees." Doc. 12, ¶ 18. On July 30, 2014, Plaintiff and Gin-Cor stipulated to a judgment against Gin-Cor for $250,000. *Id.*, ¶ 23. Gin-Cor assigned its rights under the Policy to Plaintiff, Plaintiff covenanted to not execute the judgment against Gin-Cor, and Plaintiff retained the right to seek collection of the judgment from First Mercury under the Policy. *Id.*, ¶¶ 21-23. This type of agreement is known in Arizona as a *Damron* agreement. *See Damron v. Sledge,* 460 P.2d 997 (Ariz. 1969); *see also Parking Concepts, Inc. v. Tenney*, 83 P.3d 19, 20 & n.1 (Ariz. 2004).

On December 11, 2015, Plaintiff filed this action against First Mercury, alleging breach of contract and bad faith. Doc. 1-1, ¶¶ 22-31. Plaintiff now moves for partial summary judgment on his breach of contract claims. Doc. 11. First Mercury has filed a response and cross-motion for summary judgment on all of Plaintiff's claims, arguing that the underlying action is not covered under the Policy and Plaintiff's bad faith claim is time-barred. Doc. 20.

**II.    Legal Standards.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

No party contests that Arizona law applies to this case. Under Arizona law, insurance contracts are interpreted according to their plain and ordinary meaning. *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000). "If a clause is susceptible to different constructions, [a court will attempt] to discern the meaning of the clause 'by examining the purpose of the exclusion in question, the public policy considerations involved and the transaction as a whole.'" *State Farm Mut. Auto. Ins. Co. v. Connolly*, 132 P.3d 1197, 1198 (Ariz. Ct. App. 2006) (quoting *Ohio Cas. Ins. Co. v. Henderson*, 939 P.2d 1337, 1339 (Ariz. 1997)). "If all else fails, and the clause remains ambiguous, the insurance policy will be construed to provide coverage." *Id.* "Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion." *Keggi*, 13 P.3d at 788.

**III. Analysis.**

Plaintiff argues that he is entitled to partial summary judgment "because the claims for negligence asserted in the amended complaint triggered First Mercury's duty to defend its insured, but First Mercury wrongfully breached that duty." Doc. 11 at 7. First Mercury denies that it had any duty to defend Gin-Cor because (1) the Policy's assault and battery exclusion precludes coverage for all claims asserted by Plaintiff in the underlying action, including negligence, and (2) Plaintiff's negligence claims did not allege an "occurrence" under the Policy. Doc. 20 at 5, 9.

**A.    Assault and Battery Exclusion.**

First Mercury argues that the assault and battery exclusion precludes coverage for all claims asserted by Plaintiff. *Id.* The exclusion provides:

- 4 -

> Notwithstanding anything to the contrary contained within the policy or any endorsement attached thereto, it is agreed that this insurance shall not apply to any claim, demand or suit alleging damages arising out of an actual or alleged assault and battery, nor shall there be any duty or obligation under this insurance to defend any such claim, demand or suit. Assault and battery shall not be deemed to be an occurrence whether or not committed by or at your direction. This exclusion also applies to any claim, demand or suit seeking damages arising out of an actual or alleged assault and battery which claim, demand, or suit advocates any theory of liability, whether sounding in tort or in contract, including but not limited to contractual assumption of liability, negligent hiring, negligent training, or negligent supervision.

*Id.* at 7; Doc. 18 at 18 (Exhibit I). First Mercury contends that this provision provides a broad exclusion that disclaims coverage for, in effect, any physical contact for which the insured may be held liable that results in an allegation of assault.[1]  Doc. 20 at 5-9.

The plain language of the Policy's exclusion states that the First Mercury has no duty to defend any claim arising out of an actual or alleged assault and battery. *Id.* at 7. Plaintiff's claims in the underlying litigation clearly arise out of an allegation of assault and battery. Plaintiff alleged in his amended complaint that Gin-Cor's bouncers "attacked, assaulted and violently hit the Plaintiff by punching, kicking and stomping on him" (Doc. 13 at 4, ¶ 5), and that "Defendants intended to cause harm or offensive contact with Plaintiff" (*id.*, ¶9). Because the event giving rise to the underlying litigation is an alleged assault and battery, the plain language of the Policy's exclusion precludes coverage for all of Plaintiff's underlying claims, including his claims for negligent training and supervision. *See* Doc. 20 at 7.

Plaintiff argues that the exclusion is inapplicable, ambiguous and illusory. Doc. 11 at 14. An insurance "policy is ambiguous if it is subject to 'conflicting reasonable interpretations.'" *Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 236 P.3d 421, 427 (Ariz. App. Ct. 2010). Specifically, Plaintiff argues that the exclusion is ambiguous because "it does not define the terms 'assault,' 'battery,' or

---

[1] First Mercury cites only one case where a court applying Arizona law has considered a similar exclusion – *Tucker v. Scottsdale Indem. Co.*, No. 1 CA-CV 09-0732, 2010 WL 5313753, *1 (Ariz. Ct. App. 2010). The *Tucker* opinion is unpublished and may not be cited for precedential or persuasive value. *See* Ariz. Sup. Ct. R. 111(c).

- 5 -

'arising out of.'" Doc. 11 at 15. This argument is unpersuasive. "Undefined terms of an insurance policy . . . must be construed in their plain, ordinary and everyday sense and the parameters of the definition should reflect the legal characteristics most frequently attributed to the word." *Arizona Prop. & Cas. Ins. Guar. Fund v. Dailey*, 751 P.2d 573, 575 (Ariz. Ct. App. 1987). The words "assault," "battery," and "arising out of" are commonly used and widely understood. They are not ambiguous.

Plaintiff also argues that there is a genuine issue of material fact as to whether the assault and battery exclusion applies because "the specific intent of an actor must be considered before concluding that the actor's intentional act satisfies an exclusion from coverage." Doc. 26 at 2. In support, Plaintiff relies on the Arizona Supreme Court case of *Transamerica Ins. Grp. v. Meere*, 694 P.2d 181, 189 (Ariz. 1984). In *Meere*, a dispute arose between an insurer, Transamerica, and its insured, Meere, after Meere participated in a fistfight outside a bar and was sued by the other participant for damages. *Id.* at 183. Transamerica, denied coverage under the policy's "expected or intended injury" exclusion.[2] Meere contended that the exclusion did not apply because his actions were in self-defense and thus he did not have the "intent" required for the exclusion. *Id.* at 184. The Arizona Supreme Court agreed:

> if the insured can show facts which might establish that he acted with privilege . . . or under claim of right recognized by law . . . he will be permitted to explain his subjective intent, and it will be for the fact finder to determine whether he had an underlying purpose to injure.

*Id.* at 189.

The Court does not read *Meere* to stand for the proposition Plaintiff suggests: "that the subjective intent of an actor must be considered before concluding that the actor's intentional act satisfies an exclusion." Doc. 26 at 2. Rather, *Meere* applied to an exclusion that contained an intent requirement. *Meere*, 694 P.2d at 189 ("the proper interpretation of *the clause in question* is that it excludes indemnification or coverage

---

[2] The exclusion in Meere stated: "Personal liability coverage does not apply to bodily injury, personal injury or property damage, (A) which is expected or intended by the insured[.]" *Meere*, 694 P.2d at 184.

- 6 -

when the insured intentionally acts.") (emphasis added).  Unlike the expected or intended injury exclusion in *Meere*, the Policy's assault and battery exclusion contains no language requiring intent, and it specifically includes negligence.  *See* Docs. 20 at 7; 18 at 18.  The plain and unambiguous meaning of this clause is to exclude coverage for any claim arising out of a physical altercation that is alleged to be an assault, regardless of whether the insured had the specific intent to commit assault.

Plaintiff next argues that the assault and battery exclusion conflicts with the Policy's "expected or intended injury" exclusion.  Doc. 11 at 15.  Plaintiff asserts that the two exclusions conflict because the assault and battery exclusion excludes coverage for some circumstances that, if considered under the expected or intended injury exclusion, would be covered.  *Id.*  This argument is also unpersuasive.  The assault and battery exclusion was added to the Policy by an endorsement.  Doc. 18 at 17-20 (Exhibit I – Endorsement 3 adding the assault and battery exclusion to the Policy).  The endorsement states in large, capital letters at the top of the page: "This endorsement changes the policy.  Please read it carefully."  *Id.* at 18.  The actual exclusion begins with this language: "Notwithstanding anything to the contrary contained within the [P]olicy or any endorsement attached thereto. . . ."  *Id.*  The assault and battery exclusion modified the Policy and excluded coverage for incidents that may have otherwise been covered by the Policy, including under the expected or intended injury provision.

Despite these conclusions, Plaintiff's final argument persuades the Court that summary judgment cannot be entered on this issue.  Plaintiff asserts that Gin-Cor had a reasonable expectation that it would be covered for a physical altercation between a patron and its bouncers who were trying to protect other patrons.  Doc. 11 at 17.  Under the "reasonable expectations" doctrine, Arizona courts will not enforce boilerplate provisions of an insurance contract when the insurer has reason to believe that the insured would not have agreed to those terms.  *Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277, 283 (Ariz. 1987).  Courts can consider the parties' prior negotiations, the circumstances of the transaction, whether the term is "bizarre or oppressive," whether the term

eviscerates the non-standard terms explicitly agreed to, and whether the term eliminates the dominant purpose of the transaction. *State Farm Fire & Cas. Ins. Co. v. Grabowski*, 150 P.3d 275, 280 (Ariz. Ct. App. 2007). The reasonable expectations doctrine "requires more than the insured's 'fervent hope' that coverage exists, and therefore only applies in certain limited circumstances." *Id.* at 279 (citations omitted). Those circumstances include when an insured does "not receive full and adequate notice" of a particular provision and the provision is unusual, unexpected, or emasculates apparent coverage. *Gordinier*, 742 P.2d at 284.

This case presents a material issue of fact as to whether Gin-Cor had a reasonable expectation that it would be covered for the underlying event. Gin-Cor's manager, Les Corieri, states in an affidavit that he has owned and operated "approximately forty to fifty" nightclubs in his career. Doc. 27 at 4. Corieri avers that "I have always insisted that the liability insurance for nightclubs I own cover claims and related circumstances like those alleged in [the underlying action]." *Id.* He states that Gin-Cor had no prior notice of the assault and battery exclusion, and, had it been notified, it "would have insisted on obtaining this coverage from [First Mercury] or from another carrier." *Id.* Corieri adds that "[i]t has been my experience that . . . situations involving unruly and/or disorderly guests and patrons involved in physical altercations [] are a known risk of operating a nightclub, and therefore I would have required the liability insurer covering my nightclubs to provide coverage for these types of claims." *Id.* at 5. This affidavit creates a question of fact as to whether Gin-Cor had notice of the assault and battery exclusion, an exclusion that, in this case, eliminated coverage that Corieri avows he expected to have. If it is true that Gin-Cor did not have notice of the exclusion, then First Mercury may have had reason to know that Gin-Cor did not agree to the exclusion. This evidence is sufficient to create an issue of fact that precludes summary judgment.

**B.     Occurrence**

First Mercury next argues that Plaintiff's claim is not covered because it fails to allege an "occurrence" under the Policy. The Policy defines "occurrence" as "an

accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 20 (Policy § V-13).  Under Arizona law, the word "accident" as used in the definition of an occurrence policy means "an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  *National Fire Ins. Co. of Hartford v. Lewis*, 898 F. Supp. 2d 1132, 1141 (D. Ariz. 2012) (quoting *Century Mut. Ins. Co. v. So. Ariz. Aviation, Inc.*, 446 P.2d 490, 492 (Ariz. Ct. App. 1968), and *W. Cas. & Sur. Co. v. Hays*, 781 P.2d 38, 40 (Ariz. Ct. App. 1989)).

Plaintiff argues that the events giving rise to his negligence claims in the underlying litigation were "occurrences" because, from the perspective of Gin-Cor, the actions taken by its bouncers were "undesigned, sudden and unexpected events."[3] Doc. 11 at 7-9.  First Mercury responds that the perspective of Gin-Cor is irrelevant to whether the events in question give rise to an occurrence.  Doc. 20 at 9-10.  It notes that the Policy makes no reference to the insured's point of view when defining "occurrence," but does include such language in other portions of the Policy such as the "expected or intended" exclusion.  *Id.*  First Mercury then concludes, without citation to binding authority, that "assault and battery can never be 'accidental'" and "injuries from assault and battery can never fall within the [Policy]."  *Id.* at 10.  This argument is unpersuasive.

In cases that allege vicarious liability, the issue of whether an "occurrence" has taken place must be evaluated from the perspective of the insured-employer.  *See National Fire*, 898 F. Supp. 2d at 1141-42.  In *National Fire*, general liability insurers sued an employer-insured seeking a declaration that the liability policy they had issued did not cover sexual assault allegations made by patients against the insured's employee-physician.  *Id.* at 1136-38.  The insurers argued that the employee-physician's sexual

---

[3] Plaintiff also argues that "[t]o determine whether an act under a CGL policy was an undesigned, sudden or unexpected event, Arizona law requires analysis of the subjective intent of the insured, especially in cases where an otherwise intentional tort has occurred such as an assault and battery."  Doc. 26 at 4.  Plaintiff again relies on *Meere* for this interpretation.  *Id.*  As discussed above, the Court does not read *Meere* so broadly.

- 9 -

assault did not constitute an "occurrence" because the physician intentionally engaged in the misconduct.[4] *Id.* at 1142. The insurer placed great weight on *Continental Insurance Co. v. McDaniel*, 772 P.2d 6, 10 (Ariz. Ct. App. 1988), which held that general liability coverage for "occurrences" does not encompass intentional wrongdoing for one of the insureds. *Id.* The *National Fire* court distinguished its case from *McDaniel*, noting that *McDaniel* dealt with a question of direct liability, not vicarious liability. *Id.* The court held that the physician-employee's actions did constitute an "occurrence" because, from the perspective of the employer-insured, the actions of the physician were "undesigned, sudden and unexpected events" that met the definition of an "accident." *Id.*

This Court, like the judge in *National Fire*, is faced with a question of vicarious liability. First Mercury makes no argument that Gin-Cor directed, intended, or expected its bouncers to inflict bodily harm on Plaintiff. From the perspective of Gin-Cor, the actions of the bouncers were "undesigned, sudden and unexpected events" and thus constitute an accident and fall within the meaning of "occurrence."

First Mercury also argues that the term "occurrence" was redefined by the assault and battery exclusion. Doc. 20 at 10. As discussed above, however, there is a material question of fact as to whether the assault and battery provision applies in light of the reasonable expectations of Gin-Cor. The Court accordingly cannot grant summary judgment for First Mercury on that basis.

Lastly, it is unclear whether Plaintiff is bringing his breach of insurance claim based solely on the negligence claims asserted in the underlying action or whether he intends to base it on the entirety of the underlying complaint. If Plaintiff's claim in this case is based solely on Gin-Cor's negligence, the vicarious liability analysis above would not apply. Even still, summary judgement for First Mercury would be inappropriate because negligent hiring or training by Gin-Cor could be found by a jury to satisfy the definition of "accident" and to constitute an "occurrence" under the Policy.

---

[4] The definition of "occurrence" in the *National Fire* policy was identical to the definition in this case. 898 F. Supp. 2d at 1141.

- 10 -

### C. Bad Faith.

First Mercury moves for summary judgment on Plaintiff's bad faith claim, alleging that it is time-barred. Doc. 20 at 14. Arizona law establishes a two-year limitations period for such claims. A.R.S. § 12-542; *Manterola v. Farmers Ins. Exch.*, 30 P.3d 639, 643 (Ariz. Ct. App. 2001). Plaintiff filed this action on December 11, 2015. Doc. 1. Therefore, to avoid the two-year time-bar, Plaintiff's bad faith claim must have accrued on or after December 11, 2013.

The limitations period does not commence until the insured suffers "appreciable, non-speculative harm." *Id*. at 646. First Mercury asserts that Plaintiff's bad faith claim accrued on December 20, 2012, when First Mercury sent Gin-Cor a letter that "disclaimed all responsibility to defend or indemnify the nightclub." Doc. 20 at 14; Doc. 19 at 6-10. Relying on the Arizona Court of Appeals' decision in *Manterola*, Plaintiff argues in response that the limitations period commenced on July 30, 2014, when the stipulated judgment was entered in the underlying litigation. Doc. 26 at 11.

The plaintiff in *Manterola* entered into a stipulated judgment – called a *Morris* agreement[5] – with the defendants in underlying litigation. *Id.* at 641-42. The plaintiff was assigned all rights to collect the stipulated judgment against the insurer, but did not bring an action for bad faith against the insurer until three years after the judgment was final. *Id.* The Arizona Court of Appeals held that "[a]t the latest, any damage to the [defendants] proximately caused by [the insurer's] bad faith was final and irremediable when the stipulated judgment . . . became final[.]" *Id.* at 647. Because the judgment was entered more than two years before the action was filed, the court found the bad faith claim time-barred. *Id.*

Plaintiff would have the Court read *Manterola* to stand for the proposition that, in the context of *Morris* or *Damron* agreements, the limitations period on a bad faith claim always begins when the stipulated judgment is final. *See* Doc. 26 at 10-11. But

---

[5] A *Morris* agreement is a stipulated judgment similar to a *Damron* agreement, except that it is entered after the insurer issues a reservation of rights. *See Colorado Cas. Ins. Co. v. Safety Control Co.*, 288 P.3d 764, 770 (Ariz. Ct. App. 2012).

- 11 -

1 *Manterola* holds that the stipulated judgment is the *latest* point at which a cause of action
2 accrues.  30 P.3d at 645, 647.  *Manterola* does not foreclose the possibility that the cause
3 of action may accrue earlier.

4 First Mercury's letter of December 20, 2012 contained a clear and express refusal
5 to defend Gin-Cor in the underlying litigation.  *See* Doc. 19 at 6-10 (Exhibit J).  Gin-Cor
6 clearly knew of First Mercury position on this date, but that knowledge was not enough
7 for the cause of action to accrue.  As noted above, a bad faith cause of action accrues
8 when the insured suffers "appreciable, non-speculative *harm*."  *Manterola*, 30 P.3d at 646
9 (emphasis added).  Accrual "requires not only an alleged 'wrong' but also injury."  *Id.* at
10 643.  The parties have provided no information regarding when Gin-Cor first incurred
11 harm from First Mercury's refusal to defend and indemnify.  This likely occurred when
12 Gin-Cor incurred attorneys' fees in its own defense in the underlying action.  *See D. R.*
13 *Horton Inc. v. Maryland Cas. Co.*, No. CV-14-02507-PHX-JJT, 2016 WL 1625730, at *4
14 (D. Ariz. Apr. 25, 2016) ("Such a claim would accrue at the point that Zürich failed to
15 pay the defense costs and fees associated with the Homeowners' Claims and Horton
16 knew or reasonably should have known of that failure.").  Because the parties have
17 provided no facts on when this occurred, however, the Court cannot grant summary
18 judgment.  The Court will deny the motion on this issue without prejudice to its being
19 raised at a later date.

20 **D.     Plaintiff's Motion for Partial Summary Judgment.**

21 Plaintiff seeks summary judgment on his breach of insurance claim alleging that
22 First Mercury failed to meet its obligation to defend Gin-Cor in the underlying action.
23 Doc. 11 at 2.  As discussed above, there is a material issue of fact on whether Gin-Cor
24 had a reasonable expectation that it would be covered in these circumstances.  If the
25 reasonable expectations doctrine does not apply after the facts are resolved, the assault
26 and battery exclusion will bar recovery.  Accordingly, Plaintiff's motion for partial
27 summary judgment will also be denied.
28 / / /

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (Doc. 11) is **denied**.

2. First Mercury's cross-motion for summary judgment (Doc. 20) is **denied**.

3. The Court will hold a second case management conference on **January 6, 2017 at 3:30 p.m.** The parties should file a revised Rule 26(f) report at least two days before the conference.

Dated this 2nd day of December, 2016.

David G. Campbell
United States District Judge